

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable B. M. Whiteacre
County Auditor
Grayson County
Sherman, Texas

Dear Sir:

Opinion Number O-1291
Re: Answering certain questions
with reference to construction
of provisions of House Bill 668,
passed by the Forty-sixth Legis-
lature, Regular Session, 1939

You have asked certain questions relating to the
application of House Bill 668, and which questions we shall
take up in the order in which they are presented, the first
being:

"Would the commissioners' court of a county
have the authority to employ technical help in an
advisory capacity in analyzing the bonded indebted-
ness of the county and working out a schedule of
refunding of the road bond debt in that particular
county, and which said debt is that part of the
debt which the county pays and not part of the
debt which the State pays from the proceeds of the
one cent gasoline tax, in order that such bonded
indebtedness which must be paid from county funds
might be refunded into the years when the revenues,
under the terms and provisions of said House Bill
668 would be sufficient to pay such indebtedness?"

We think the foregoing question presents two subject
matters, the first being -- whether or not the county has
the authority to retain or employ technical help in an ad-
visory capacity in analyzing the bonded indebtedness of the
county, and working out a schedule of refunding of the road
bond debt in that particular county, and second, the question

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable B. M. Whiteacre, page #2

seems to inquire as to whether or not that part of the debt
which the county pays, and not that part of the debt which
the State pays from the proceeds of the one-cent gasoline
tax, can be separated into two types of debts, namely,
eligible and ineligible.

In treating of the first subject matter raised in
your question, that is, as to the authority of the county to
employ technical help for the purpose stated in your question,
we approach the subject by stating the well recognized rule
that the commissioners' court, the governing body of the county,
is a court of limited jurisdiction and has only such powers as
are conferred upon it by law.  The rule has been extended to
empower the commissioners' court to appoint agents for the
accomplishment of purposes authorized by law.  A majority of
the cases touching upon this question involve the employment
of attorneys at law and it has often been held that an attorney
may be retained in special cases for specific services but that
the court would not have the power to employ an attorney on a
salary basis for services neither required nor performed. See
32 S. W. 188, Grooms vs. Atascosa County; also City National
Bank vs. Presidio County, 26 S. W. 775, Jones vs. Veltman,
171 S. W. 287.  In the case of Russell vs. Cage, 1 S. W. 270,
the Supreme Court held that an architect may be employed to
prepare plans and specifications, make a draft of a contract,
and make the contract itself, subject to the approval of the
commissioners' court.  In the case of Gulf Bitulithic Company
vs. Nueces County, reported in 11 S. W. (2d) 305, the Supreme
Court sustained the validity of a contract employing a super-
visor of road building, and in an earlier case, Galveston
County vs. Gresham, 220 S. W. 560, the court held that the
commissioners' court had the power to employ an attorney to
carry out its power to construct a seawall.

It must be borne in mind that all of the foregoing
authorities construe to the commissioners' court the authority
to employ agents only for the accomplishment of specific objec-
tives, and that the general trend of authority denies the
power to the commissioners' court to employ agents on a salary
or contract basis for the performance of services that may or
may not be required during the course of their employment.
Quoting the court in the case of the City National Bank vs.
Presidio County, 26 S. W. 775 — "We conclude for these
reasons that the employment of counsel in the case of State
vs. Carothers, was a legal exercise of power on the part of

Honorable B. M. Whiteacre, page #3

the commissioners' court done in the interest and business of the county." This case was determined in 1894 by the Court of Civil Appeals and indicates that the commissioners' court could validly exercise the power of employing agents if done in the interest and business of the county. The question as to the importance of the service to be performed must necessarily be a question of fact to be determined by the commissioners' court. We, therefore, conclude that while there is no express authorization for the employment of technical advisors for the purpose of assisting the county in the refunding of its road debt, we think the weight of authority would imply that power to the commissioners' court if the refunding was of sufficient importance to make its accomplishment vital to the interest of the county and in such a manner as to classify such service as being for a county purpose, but that in no event would the court have the authority to contract for the services of a technical expert for a fixed period at a given salary to perform duties which may or may not be required.

Next we consider the second subject matter appearing in your first question, and that is, whether or not a particular issue of bonds may be regarded as partly eligible and partly ineligible; in other words, can that part of the issue which participates in the County and Road District Highway Fund be considered apart from the balance of such issue which does not participate in such fund. We are of the opinion that no such character can be imputed to an issue under the terms of House Bill 688. Such issue must be considered as a unit and that all bonds composing same participate ratably throughout in the benefit accorded under this law. In support of this conclusion we quote from subsection (c) of Section 6 of House Bill 688, which reads, in part:

"Whenever in the case of any particular issue of obligations the proceeds thereof shall have been expended partly on designated State highways or highways heretofore constituting designated State highways, and partly on roads which never have been designated State highways, said Board shall ascertain and determine the amount of said obligations, the proceeds of which were actually expended on State highways or on roads heretofore constituting State highways, and said obligations to said amount and extent

Honorable B. M. Whiteacre, page #4

> shall be eligible for participation in the moneys
> coming into the County and Road District Highway
> Fund, and said ascertainment and determination
> shall be certified to the county judge by said
> Board and all of the unmatured outstanding obli-
> gations of said issue shall ratably have the bene-
> fit of said participation in said money."

This same subsection states substantially that fol-
lowing such ascertainment by the Board, and after reasonable
notice and hearing thereon, the determination shall be final
and conclusive and shall not be subject to review in any
other tribunal. We think this conclusion is further strength-
ened by the language of subsection (g) of Section 6, which,
to state it briefly, requires the counties to collect taxes
on the property in said respective counties and defined road
districts in an amount of money equal to the difference be-
tween the amount of the requirement and the amount available
for application from the gasoline tax inuring to the County
and Road District Highway Fund, and that the entire proceeds
of all taxes collected on any eligible issue of bonds shall
be remitted by the County Treasurer of each county collecting
the same to the State Treasurer to be held by the State Treas-
urer as ex-officio treasurer of said county or defined road
district for the benefit of the county or defined road dis-
trict remitting the same and be disbursed to meet the int-
erest, principal and sinking fund requirements on the eligible
obligations of such county or defined road district. When the
money from the county for any particular interest or principal
maturity, together with that supplied through the County and
Road District Highway Fund, are used for the payment thereof
on such eligible obligations, it becomes the duty of the
Comptroller of Public Accounts upoh receipt of said obliga-
tions and coupons, to cancel them and return same to the
commissioners' court of the particular county, and which
court shall cause to be duly entered a record of such can-
cellation.  It therefore follows that this law does not
contemplate a division of obligations whereby one part of
which could be called eligible and the other ineligible.
The law expressly confers upon the Board the right to re-
quire any issue or any part thereof to be refunded into
refunding obligations, bearing such rate of interest and
having such maturities as will prevent an inequitable or

disproportionate participation in the money coming into the County and Road District Highway Fund in any particular period. This language we find in subsection (i) of Section 6 of the law, to which you are referred.

Your second question reads as follows:

"If it were shown by the county that the refunding of that part of its road bond debt which the county levies an ad valorem tax to pay could and would be retired at the dates of maturities and that the revenues under the terms and provisions of House Bill 688 were sufficient to meet such maturities, would it be necessary for such county to have the approval of the Board of County and District Road Indebtedness to effect such refunding?"

In Opinion Number O-1293, rendered by this department in response to a request from the Board of County and District Road Indebtedness, we carefully covered the refunding duties imposed upon the Board by House Bill 688. Briefly our interpretation of that provision is to the effect that the Board's duty with respect to the refunding of bonds extends only to issues of bonds eligible to participate in the primary benefits of the gasoline tax of one cent allocated to the Board. Hereinabove we have outlined our conclusion as to what constitutes eligible obligations and, in harmony with such conclusion, we must advise that it is our opinion that any such road debt as is described in your second question which the county may seek to refund must necessarily be submitted to the Board for approval prior to effecting such refunding. As stated in Opinion Number O-1293, above referred to, the expense of any such refunding must likewise be submitted to the Board for approval prior to incurring same.

We are enclosing herewith a copy of our Opinion Number O-1293, in the hope that same will prove of some benefit to you and assist you in solving some of the problems arising out of House Bill 688.

Very truly yours

ATTORNEY GENERAL OF TEXAS

APPROVED NOV 2, 1939

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

By Clarence E. Crowe

Clarence E. Crowe
Assistant

CEC-s
Encl - or. MKK